## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA PAUL VANDEGRIFT,** | : | |
| **Petitioner** | : | **No. 1:25-cv-02403** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **WARDEN OF FCI ALLENWOOD LOW,** | : | |
| **Respondent** | : | |

## MEMORANDUM

Currently before the Court is pro se Petitioner Joshua Paul Vandegrift ("Vandegrift")'s petition for a writ of habeas corpus under 28 U.S.C. § 2241 in which he challenges disciplinary sanctions imposed for disruptive conduct while he was incarcerated in a BOP correctional facility. For the reasons stated below, the Court will deny the petition.

## I.    BACKGROUND

### A.    Vandegrift's Convictions, Sentence, Place of Confinement, and Projected Release Date

Vandegrift is currently serving a term of one hundred and fifty-six months' imprisonment after pleading guilty to receipt and attempted receipt of child pornography (18 U.S.C. § 2252A(a)(2)(A), (b)(1)) in the United States District Court for the Western District of New York. See United States v. Vandegrift, No. 18-cr-06044 (W.D.N.Y. filed Oct. 31, 2016) ("Vandegrift").[1]

He is currently incarcerated at Federal Correctional Institution Allenwood Low ("FCI Allenwood

---

[1] The Court takes judicial notice of the docket in Vandegrift's underlying criminal case. See Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court "may take judicial notice of the contents of another [c]ourt's docket"); Wilson v. McVey, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket). That docket shows that Vandegrift's criminal proceedings were initiated by criminal complaint on October 31, 2016, and the grand jury returned an indictment on May 1, 2018, as well as a superseding indictment on May 8, 2018. See Vandegrift, ECF Nos. 1, 37, 42.

Low") and has, according to the Federal Bureau of Prisons ("BOP") inmate locator

(https://www.bop.gov/inmateloc/), an anticipated release date of March 10, 2030.

### B.    Procedural History

Vandegrift commenced the instant action by filing his Section 2241 habeas petition,

which the Clerk of Court docketed on December 12, 2025.[2]  (Doc. No. 1.)  In his petition,

Vandegrift challenges disciplinary sanctions which included, inter alia, the loss of good conduct

time ("GCT"), imposed upon him after a disciplinary hearing officer ("DHO") determined that

he committed disruptive conduct, most like a sexual proposal or threat to a prison official, in

violation of BOP Code 299.  (Id. at 2.)  He appears to assert that the imposition of sanctions

violated his due process rights under the Fifth Amendment to the United States Constitution

because there was no evidence presented to support the DHO's decision.  (Id. at 6.)  For relief,

Vandegrift seeks an order directing the BOP to expunge the incident report leading to his

sanctions, reverse the sanctions imposed by the DHO, and restore his lost GCT.  (Id. at 7.)

On December 18, 2025, the Court issued an order which, inter alia, directed Respondent

to file a response to Vandegrift's Section 2241 petition.  (Doc. No. 4.)  Respondent timely filed a

response in opposition to the petition on January 7, 2026.  (Doc. No. 6.)  Vandegrift filed a reply

brief which the Clerk of Court docketed on January 22, 2026.  (Doc. No. 7.)  As such,

Vandegrift's petition is now ripe for disposition.

---

[2]  Vandegrift neither remitted the filing fee nor sought leave to proceed in forma pauperis when
he filed his petition; as such, an Administrative Order issued providing him with a period of
thirty days to pay the filing fee or apply for leave to proceed in forma pauperis.  (Doc. No. 3.)  In
response, Vandegrift timely paid the fee.  See (Unnumbered Docket Entry Between Doc. Nos. 3
and 4).

### C.    The BOP's Administrative Process in Inmate Disciplinary Cases[3]

The BOP has enacted specific procedures for disciplinary proceedings.  See 28 C.F.R. §§ 541.1–.8.  Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report.  See id. § 541.5(a) ("The discipline process starts when staff witness or reasonably believe that you committed a prohibited act.  A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing.").  The incident report ordinarily must be issued within twenty-four hours of the time the staff member became aware of the prisoner's involvement in the incident.  See id. (stating that inmates "will ordinarily receive the incident report within 24 hours of staff becoming aware of [the inmate's] involvement in the incident").  The incident is then investigated by a staff member.  See id. § 541.5(b) (indicating that "[a]fter [the inmate] receives an incident report, a [BOP] staff member will investigate it").

After the BOP staff member investigates the incident, the correctional facility's Unit Discipline Committee ("UDC") reviews the incident report and takes one of the following actions: (1) finds that the prisoner "committed the prohibited act(s) charged[] and/or a similar prohibited act[] as described in the incident report"; (2) finds that the prisoner "did not commit the prohibited act(s) charged"; or (3) refers the incident report to a DHO for further review.  See id. § 541.7(a)(1)–(3).  Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low.  See id. § 541.3(a).  If a prisoner is charged with a prohibited act in the Greatest or High severity category, the UDC automatically refers the incident report to the DHO for further review.  See id. § 541.7(a)(4).

---

[3]  To provide context to the Court's recitation of Vandegrift's relevant disciplinary proceedings at FCI Allenwood Low, the Court will first set forth the BOP's procedures for such proceedings.

When an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. § 541.8.  Pursuant to these procedures, the prisoner is entitled to notice of the charges at least twenty-four hours before the hearing.  See id. at § 541.8(c) (stating that the prisoner "will receive written notice of the charge(s) against [them] at least 24 hours before the DHO's hearing" and explaining that they "may waive this requirement, in which case the DHO's hearing can be conducted sooner").  The prisoner is entitled to appear at the hearing and have staff representation at the hearing.  See id. at § 541.8(d), (e).  The prisoner is also "entitled to make a statement and to present documentary evidence to the DHO on [their] own behalf."  See id. § 541.8(f).  A prisoner may request to have witnesses appear "before the DHO either in person or electronically" at the hearing on their behalf.  See id. § 541.8(f)(1).  However, the DHO may refuse to call requested witnesses if "they are not reasonably available, their presence at the hearing would jeopardize institutional security, or they would present repetitive evidence."  See id. § 541.8(f)(3).

When rendering a decision on an incident report, the DHO considers "all evidence presented during the hearing."  See id. § 541.8(f).  The decision of the DHO must be "based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."  See id. (emphasis added).  Following the hearing, the DHO must provide a written report documenting (1) whether the prisoner was advised of their rights, (2) the evidence relied upon by the DHO, (3) the DHO's decision, (4) the sanctions imposed by the DHO, and (5) the reasons of the DHO for imposing those sanctions.  See id. § 541.8(h)(1)–(5).

A prisoner dissatisfied with the DHO's decision "may appeal the [decision] through the Administrative Remedy Program, 28 CFR part 542, subpart B."  See id. § 541.8(i).  Pursuant to the Administrative Remedy Program, a prisoner may file an appeal from the DHO's decision to

the Regional Director for the region where the prisoner is currently confined within twenty calendar days of the DHO's decision.  See id. § 542.15(a).  The Regional Director then has thirty calendar days to respond to the appeal.  See id. § 542.18.  If the prisoner is dissatisfied with the Regional Director's response, that decision may be appealed to the BOP's General Counsel at the BOP's Central Office within thirty calendar days from the date of the Regional Director's response.  See id. § 542.15(a).  General Counsel then has forty calendar days to respond to the appeal.  See id. § 542.18.[4]

### D.    Vandegrift's Disciplinary Proceedings

While he was incarcerated at Federal Correctional Institution Danbury ("FCI Danbury") in Connecticut, Vandegrift was the subject of an incident report dated May 31, 2025 (No. 4125985), charging him with disruptive conduct in violation of BOP Code 299 – most like making a sexual proposal or threat in violation of BOP Code 206, based on events that allegedly occurred on May 6, 2025.  See (Doc. No. 1-1 at 7).  The incident report describes this charge as follows:

> On May 31, 2025, at approximately 9:40 a.m., while reviewing recently closed cases signed off by the Warden, it was determined Case DAN-25-0089 has been signed off by the Warden on May 30, 2025, at 12:47 p.m.  It was determined by the SIS office on May 6, 2025, at approximately 12:00 p.m., SIS was reviewing outgoing mail from Inmate Vandegrift, Joshua, Reg. No. 27172-055.  One letter was dated May 5, 2025, at 6:30 p.m., to Justin Vandegrift [sic] of 60 Briarcliff Drive, Horseheads, NY, 14845.  A review of Truview records indicates Justin Vandegrift is Inmate Vandegrift's brother.  A section in the letter was talking about sexual urges towards a staff member.  Inmate Vandegrift wrote, There is this cougar

---

[4] "No administrative grievance is considered to have been fully and finally exhausted until denied by the [BOP's] Central Office."  Sharpe v. Costello, 289 F. App'x 475, 478 (3d Cir. 2008) (unpublished) (citing 28 C.F.R. §542.15(a)).  However, a prisoner may consider the lack of a timely response to their administrative remedy or appeal as a denial.  See 28 C.F.R. § 542.18 (providing that if "the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level").

milf that's foreign with an amazing body. She was turned on the wall writing something down and her ass was right in my face! I was sitting down. I thought fuck! I wanted to so bad! I been [sic] locked up too long!!! I don't think prison does me any good! I wonder if any of these people do onlyfans. A second letter was dated May 25, 2025, at 9:30 p.m., to Michelle Galpin of 1002 Laurel Street, Elmira, NY, 14904. A review of Truview records indicates Michele Galpin is Inmate Vandegrift's aunt. A section of the letter was talking about sexual urges towards a staff member. Inmate Vandegrift wrote, I fought a wicked strong urge today. I was sitting in a chair getting vitals and this cougar milf was turned against the wall with her ass a foot away from my face and hands. I mean she is fine, foreign, and nice! Holy fuck I wanted to cop a feel. I fantasied even much more. Ugh! I need to go home! On May 7, 2025, at approximately 9:38 a.m., I interviewed Inmate Vandegrift who stated he was talking sexually about X-Ray Technician, A. Kulla in these letters.

On May 7, 2025, at approximately 1:00 p.m., I assisted staff with securing and inventorying Inmate Vandegrift's property. This investigator was searching for any other documentation of sexual urges towards staff members. At that time, I found one of Inmate Vandegrift's journals. Inside the journal a section stated, I hate seeing female staff that look good because I wish we could have a sexual encounter. I wish we could have a close relationship.

A third letter was discovered and dated May 5, 2025, at 10:00 p.m., and addressed to Mom. A section in the letter stated, I fought a strong sexual urge today. This beautiful extremely attractive cougar/milf with a foreign accent had faced the wall to write something down and I was a foot away sitting in a chair. I couldn't help but notice her perfect ass was so close to me. I had bad wild thoughts of copping a feel. Even more a wild sex scene. This is what prison has done to me! I mean this lady is so fucking perfect!

This investigator received a memo from Psychology stating [o]n October 24, 2023, Inmate Vandegrift was counseled and documented about maintenance of appropriate boundaries when talking about staff. Thus, Inmate Vandegrift continues to write sexual urges towards staff members after being previously counseled about this type of behavior.

This conclusion was determined by the review of CCTV, inmate communications, medical assessments, and inmate interviews.

See (Doc. No. 6-4 at 1–2 (cleaned up)).

On the same date as the issuance of the incident report, prison officials provided

Vandegrift with notice of the report and advised him of his right to remain silent. See (id. at 2,

4). Prison officials then investigated the allegations in the report, and during the investigation

Vandegrift stated, "My mom wrote me back telling me that writing this stuff is against the rules. . . . I would never act on those fantasies." See (id. at 4). Vandegrift was noted as having a "calm and understanding attitude" during the investigation. See (id.).

Vandegrift's incident report was then referred to FCI Danbury's UDC, which conducted an investigation during which Vandegrift refused to comment about his underlying alleged misconduct. See (id. at 3, 4). On June 2, 2025, the UDC referred Vandegrift's incident report to a DHO for a hearing. See (id.). Vandegrift also was issued a Notice of Disciplinary Hearing before the DHO and was advised of his rights to, inter alia, "have a full-time staff member represent [him] at the hearing" and "call witnesses at the hearing and . . . present documentary evidence on his behalf." See (Doc. No. 6-5 at 1). This Notice indicates that Vandegrift declined to have witnesses at the hearing, and that he wanted a staff member, Dr. Zimmerman, to represent him at the hearing. See (id.). He further received and signed an Inmate Rights at Discipline Hearing form, which set forth the rights afforded to him at his DHO hearing. See (Doc. No. 6-6 at 1).

On June 12, 2025, a DHO held a hearing, after which they issued a written report finding that Vandegrift violated Code 299. See (Doc. Nos. 1-1 at 7–11; 6-7 at 1–4). The DHO noted in the report that Vandegrift denied the charge and waived the right to have witnesses. See (Doc. Nos. 1-1 at 7; 6-7 at 1). The DHO also indicated that Vandegrift stated during the hearing: "I've only been counseled by Psych treatment at other places. I was instructed to log sex urges if they bother me. I was told this by an outside provider to trust family. I was trying to cope by telling family. I thought I was doing the right thing." See (Doc. Nos. 1-1 at 7; 6-7 at 1).

Despite Vandegrift's statement and denial of the charge, the DHO concluded that he violated Code 299 by disrupting conduct – most like making a sexual proposal or threat in

7

violation of Code 206.  See (Doc. Nos. 1-1 at 8; 6-7 at 2).  The "specific evidence relied on to support [the DHO's] findings" is set forth in the DHO's written report as follows:

> The DHO notes that this hearing was being held via video.  The DHO noted you initially requested P. Crampton as a staff representative during the UDC hearing, however, you decided to change that request to Dr. Zimmerman prior to the DHO hearing and the Notice of Discipline Hearing [b]efore the DHO form properly reflects your change in staff representative decision.  Your due process rights were reviewed with you by the DHO and you stated you understood your rights.  The DHO read aloud the incident report.  At no time during the DHO hearing did you raise any procedural issues, request witnesses or present written documentation as evidence.

> The DHO finds that on May 31, 2025, you were charged with violating prohibited act 299 – DISRUPTIVE CONDUCT-HIGH MOST LIKE 206 – MAKING SEXUAL PROPOSAL/THREAT.  The evidence supports DISRUPTIVE CONDUCT-HIGH MOST LIKE MAKING SEXUAL PROPOSAL/THREAT; therefore, code 299 most like 206 was upheld.

> To support this finding, the DHO relied upon staff member DuBret's written account of the incident paraphrased as follows: On May 31, 2025, at approximately 9:40 a.m., while reviewing recently closed cases signed off by the Warden, it was determined Case DAN-25-0089 has been signed off by the Warden on May 30, 2025, at 12:47 p.m.  It was determined by the SIS office on May 6, 2025, at approximately 12:00 p.m., SIS was reviewing outgoing mail from Inmate Vandegrift, Joshua, Reg. No. 27172-055.  One letter was dated May 5, 2025, at 6:30 p.m., to Justin Vandegrift of 60 Briarcliff Drive, Horseheads, NY, 14845.  A review of Truview records indicates Justin Vandegrift [sic] is Inmate Vandegrift's brother.  A section in the letter was talking about sexual urges towards a staff member.  Inmate Vandegrift wrote, There is this cougar milf that's foreign with an amazing body.  She was turned on the wall writing something down and her ass was right in my face!  I was sitting down.  I thought fuck!  I wanted to so bad!  I been [sic] locked up too long!!!  I don't think prison does me any good!  I wonder if any of these people do onlyfans.  A second letter was dated May 25, 2025, at 9:30 p.m., to Michele Galpin of 1002 Laurel Street, Elmira, NY, 14904.  A review of Truview records indicates Michele Galpin is Inmate Vandegrift's aunt.  A section of the letter was talking about sexual urges towards a staff member.  Inmate Vandegrift wrote, I fought a wicked strong urge today.  I was sitting in a chair getting vitals and this cougar milf was turned against the wall with her ass a foot away from my face and hands.  I mean she is fine, foreign, and nice! Holy fuck I wanted to cop a feel.  I fantasied even much more.  Ugh!  I need to go home!  On May 7, 2025, at approximately 9:38 a.m., I interviewed Inmate Vandegrift who stated he was talking sexually about X-Ray Technician, A. Kulla in these letters.

On May 7, 2025, at approximately 1:00 p.m., I assisted staff with securing and inventorying Inmate Vandegrift's property. This investigator was searching for any other documentation of sexual urges towards staff members. At that time, I found one of Inmate Vandegrift's journals. Inside the journal a section stated, I hate seeing female staff that look good because I wish we could have a sexual encounter. I wish we could have a close relationship.

A third letter was discovered and dated May 5, 2025, at 10:00 p.m., and addressed to Mom. A section in the letter stated, I fought a strong sexual urge today. This beautiful extremely attractive cougar/milf with a foreign accent had faced the wall to write something down and I was a foot away sitting in a chair. I couldn't help but notice her perfect ass was so close to me. I had bad wild thoughts of copping a feel. Even more a wild sex scene. This is what prison has done to me! I mean this lady is so fucking perfect!

This investigator received a memo from Psychology stating on October 24, 2023, Inmate Vandegrift was counseled and documented about maintenance of appropriate boundaries when talking about staff. Thus, Inmate Vandegrift continues to write sexual urges towards staff members after being previously counseled about this type of behavior.

This conclusion was determined by the review of CCTV, inmate communications, medical assessments, and inmate interviews.

In addition to the previous written account of the incident, the DHO considered your statement during the DHO hearing in which you stated the following: I've only been counseled by Psych treatment at other places. I was instructed to log sex urges if they bother me. I was told this by an outside provider to trust family. I was trying to cope by telling family. I thought I was doing the right thing. The DHO also considered your staff representative statement during the DHO hearing in which they stated the following: I met with him. The counseling in 2023 had nothing to do with sexually related boundaries.

He told me the same thing.

Your contention that you were trying to cope with your urges by documenting them and telling your family because that is what you were told to do by a provider that you had in the past does not relieve you of the responsibility by the DHO. The DHO finds that you are attempting to minimize your actions with the DHO in order to not accept responsibility for your actions. The DHO reviewed all of the supporting documentation which included the written letters and journals and found that they were consistent with an inmate who is communicating there is a threat to that staff member. The DHO finds the fact that you did not act on that threat is valid, however, you did in fact make statements regarding a staff member that were sexual in nature which is not authorized. The DHO finds your actions of writing these letters about staff was disruptive most like making a sexual proposal/threat.

The DHO finds there was no evidence presented that you were instructed by a Bureau staff member or Bureau Doctor to write down your sexual urges towards staff. The DHO finds your staff representative did not provide any statement or evidence to sway the DHO in his decision in this case. The DHO gave greater weight to the reporting staff member's statements; specifically, that you displayed disruptive conduct most like making a sexual proposal/threat when you wrote and sent several letters talking about sexual urges towards a staff member, stating "I fought a wicked strong urge today. I was sitting in a chair getting vitals and this cougar milf was turned against the wall with her ass a foot away from my face and hands. I mean she is fine, foreign, and nice! Holy fuck I wanted to cop a feel. I fantasized even much more. Thus, the DHO determined your claim of only writing your urges and sharing them with your family because that is what you were told to do from a prior provider that you had before you were in the Bureau was without merit.

Therefore, based on the greater weight of evidence, the DHO determined you did not present sufficient evidence to refute the charge. Consequently, the DHO finds you committed prohibited act 299 – DISRUPTIVE CONDUCT-HIGH MOST LIKE 206 – MAKING SEXUAL PROPOSAL THREAT.

See (Doc. Nos. 1-1 at 8–10; 6-7 at 2–4 (cleaned up)).

Following these findings, the DHO imposed three sanctions: (1) loss of twenty-seven days of GCT; (2) seven days of disciplinary segregation; and (3) loss of commissary privileges for 3 months. See (Doc. Nos. 1-1 at 10; 6-7 at 4). The reasons for these sanctions are explained in the DHO's written report as follows:

The action/behavior on the part of any inmate to make any sort of sexual comments or statements regarding any staff member poses a serious threat to the health, safety, and welfare of not only that staff member, but that of the inmate making the statements. This type of behavior interferes with the staff member's ability to complete his/her assigned duties and to effectively deal with all other inmates. This type of action behavior cannot and will not be tolerated from any inmate. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behaviors at all times.

See (Doc. Nos. 1-1 at 10; 6-7 at 4).

Vandegrift timely appealed from the DHO's decision to the Regional Director.  See (Doc.

No. 1-4 at 1–5).  In his appeal, Vandegrift complained that:

> I write to appeal IR 4125985 in which I was found guilty of a 299 most like a 206.
> Simply put I have not made a threat nor a proposal.  I expressed a fantasy in [(a)]
> private letters to my family and [(b)] in journals.  These forms of journaling were
> never intended nor directed to reach any employee and were helpful to me coping
> so that I did not act on such fantasy.  I stated, according to the IR, "I wanted" or "I
> want" not "I'm going to" or "my plan is . . . ."  Would an inmate who states "I want
> to go home, can't wait," be charged and found guilty of a 199 most like escape?
> Clearly not, thus, the IR is predicated on an irrational fear.  The worst case for the
> IR would be obscence [sic] language. . . .
>
> The letters were not intended to be read by any staff and thus could not constitute
> a "proposal" nor a "threat."  Likewise a personal journal given by psychology also
> was not intended to be read by any staff.  The only conceivable 299 most like 206
> would be if an inmate made inuendos [sic] or enticing comments to a staff [sic].
> Likewise, would an inmate who says "I hate that I have to listen to you," but
> nevertheless obeys be charged with a 399 most like disobeying a direct order?  No.
> I request that my IR be expunged and the sanctions lifted for the above reasons.

See (Doc. No. 1-1 at 5–6).

On August 27, 2025, the Regional Director issued a decision affirming the DHO's

findings and sanctions.  See (id. at 4).  The Regional Director's Response stated:

> You appeal the June 12, 2025[] decision of the Discipline Hearing Officer (DHO)
> at FCI Danbury finding you committed the prohibited act of Conduct Which
> Disrupts, Code 299, most like Making Sexual Proposals or Threats, Code 206,
> Incident Report No. 4125985.  You deny committing the prohibited act, and list
> multiple issues which you contend support your request for the Incident Report to
> be expunged.
>
> The DHO reasonably determined you committed the prohibited act based on section
> 11 of the Incident Report and supporting evidence.  A review of the disciplinary
> proceedings revealed no due process concerns or deviations from policy.  Section
> 11 of the Incident Report contains sufficient notice of the charge and allowed you
> to prepare a defense.  The record reflects the DHO afforded you the opportunity to
> present evidence and provide a statement in your defense.  The DHO considered
> your statement prior to rendering a decision.
>
> The record in this case reflects substantial compliance with Program Statement
> 5270.09, Inmate Discipline Program.  The decision of the DHO was based upon the
> greater weight of the evidence, and the sanctions imposed were consistent with the

severity level of the prohibited act.  The sanctions imposed were not disproportionate to your misconduct.  Accordingly, your appeal is denied.

See (id. ).

Vandegrift filed an appeal from the Regional Director's decision to the BOP General Counsel.  See (id. at 1–2).[5]  However, Vandegrift asserts that he never received a response to his appeal from the General Counsel.  See (Doc. No. 1 at 3).[6]

## II.    LEGAL STANDARDS

### A.    Section 2241 Habeas Petitions

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence."  See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas").  While "the precise meaning of 'execution of the sentence' is hazy[,]" the phrase has been interpreted as to "put into effect" or "carry out."  See Woodall, 432 F.3d at 242, 243 (citation omitted).  As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody. See, e.g., Barden v. Keohane, 921 F.2d 476, 478–79 (3d Cir. 1990) (finding that a federal

---

[5]  Vandegrift's grounds for his appeal to the General Counsel are almost identical to his grounds stated in his appeal to the Regional Director.  Compare (id. at 1–2), with (id. at 5–6).  As such, the Court has not repeated them here.

[6]  Respondent attaches a copy of Vandegrift's "Administrative Remedy Generalized Retrieval" to his response.  See (Doc. Nos. 6-1 at 1; 6-2 ¶ 3; 6-8).  The Retrieval states that the General Counsel's response was due by November 4, 2025, but it does not indicate the date of a decision. See (Doc. No. 6-4 at 27).  Based on this information, it appears that Vandegrift can consider the lack of a timely response as a denial of his appeal.  See 28 C.F.R. § 542.18 (providing that if "the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level").

inmate's Section 2241 petition is actionable where the inmate attacks the term of their custody by challenging the way the BOP is computing their federal sentence).

### B.    Due Process Claims Relating to Prison Disciplinary Proceedings

"[P]rison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."[7] <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  As such, a prisoner is entitled to the following minimum procedural due process rights when accused of misconduct in prison which may result in the loss of GCT: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in their defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged prisoner is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  <u>See</u> <u>id.</u> at 563–67.

The standard of review concerning the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." <u>See</u> <u>Superintendent v. Hill</u>, 472 U.S. 445, 455–56 (1985).  This standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  <u>See</u> <u>id.</u> at 455.  Instead, if there is "some evidence" to support the decision of the hearing examiner, the district court must reject any evidentiary challenges by the petitioner.  <u>See</u> <u>id.</u> at 457.  Overall, judicial review of a prison disciplinary decision is limited to

---

[7] Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law.  <u>See</u> <u>Torres v. Fauver</u>, 292 F.3d 141 (3d Cir. 2002).  Nevertheless, there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses GCT.  <u>See</u> <u>id.</u>  Since Vandegrift's sanctions included the loss of GCT, he has identified a valid liberty interest in this matter for due process purposes.

ensuring that the prisoner was afforded certain procedures, the action against them was not

arbitrary, and that the ultimate decision has some evidentiary support.  See id.

## III.    DISCUSSION

### A.    The Parties' Arguments

Vandegrift's habeas petition contains only a limited recitation of his grounds for relief.

See (Doc. No. 1 at 6).  Despite this issue, the Court construes Vandegrift as asserting that his due

process rights were violated because the DHO failed to base their decision on sufficient

evidence.  See (id.).  He argues that "[t]here is no shred of evidence that [he] ever proposed nor

threatened any staff with a sexual/threat."  See (id.).

Respondent contends that the Court should deny Vandegrift's petition because he

received all the process he was due.  See (Doc. No. 6 at 5–8).  Respondent asserts that Vandegrift

received sufficient notice of the charges against him, had an opportunity to call witnesses and

present evidence in his own defense, and received a written statement from the DHO identifying

the evidence in support of their decision.  See (id. at 6–8).  Respondent also argues that the DHO

properly documented "some evidence" to support their findings, namely: (1) The reporting staff

member's account of the incident as reflected in the incident report; (2) The staff member's

written accounts and memoranda; (3) Vandegrift's statement; (4) Dr. Zimmerman's statement;

and (5) Vandegrift's written letters and journal entry.  See (id. at 10).  Respondent further

contends that "[t]he DHO provided an exhaustive breakdown of his decision-making process

after reviewing all the evidence, including Vandegrift's verbal statements."  See (id. at 11).

In his reply brief, Vandegrift argues that the BOP is not entitled to "near-total deference

in disciplinary matters," and he asserts that that the BOP cannot satisfy the "some evidence"

standard by merely pointing to any evidence in the record, "regardless of whether it establishes

the elements of the charged offense." <u>See</u> (Doc. No. 7 at 1).  He points out that the DHO relied

on evidence consisting of his "private entries recording sexual fantasies," which were (1) never

communicated to staff, (2) not intended to be communicated to staff, (3) created as part of his

mental-health therapy, and (4) reinforced by Dr. Zimmerman, who had provided his "diary" to

the DHO.  <u>See</u> (<u>id.</u> at 2–3).  He contends that none of this evidence shows that he made a sexual

proposal or a threat and communicated it to staff.  <u>See</u> (<u>id.</u> at 3).

Vandegrift also contends that the disciplinary proceeding violated his due process rights

in several respects beyond the DHO's failure to rely on "some evidence" to find him responsible

for the charge offense.  <u>See</u> (<u>id.</u> at 4).  First, he asserts that the DHO failed to address his defense

because he did not merely deny the charge as indicated by the DHO; rather, he "explained the

therapeutic origin and purpose of the diary."  <u>See</u> (<u>id.</u>).  Second, he believes that the DHO

"conflated sexual threat" because his private writings and sexual thoughts did not constitute a

threat.  <u>See</u> (<u>id.</u>).  Finally, he argues that the DHO "effectively rewrote the regulation" by

"removing the communication and direction elements" of the offense and, as such, the Court

need not give the DHO's decision deference pursuant to the United States Supreme Court's

decision in <u>Loper Bright Enterprises v. Raimondo</u>, 603 U.S. 369 (2024).[8]  <u>See</u> (<u>id.</u>).

**B.    Analysis**

After reviewing the parties' submissions, the Court concludes that Vandegrift has not

shown that his due process rights were violated during the disciplinary proceedings at issue.[9]  As

---

[8]  In <u>Loper Bright Enterprises</u>, the Supreme Court overruled <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984), and held that federal courts "need not and under the [Administrative Procedure Act] may not defer to a federal agency interpretation of the law simply because a statute is ambiguous."  <u>See</u> 603 U.S. at 412–13.

[9]  The Court's analysis will be limited to whether the DHO relied upon sufficient evidence in finding Vandegrift responsible for the disciplinary infraction because he does not argue that his

indicated above, the DHO found that Vandegrift violated Code 299, which is charged for conduct that "interferes with the security or orderly running of the institution or the [BOP] most like another High severity prohibited act."  See 28 C.F.R. § 541.3, Table 1.  His conduct was deemed most like a Code 206 violation, which is a High severity prohibited act and is charged when a prisoner "[m]ake[s] sexual proposals or threats to another."  See (id.).

Preliminarily, the Court notes that both parties miss the mark in their submissions. Vandegrift improperly focuses on whether he did or did not actually make a sexual proposal or threat to a prison official, and he does not address the Code 299 component, i.e., whether his conduct interfered with the security or orderly running of FCI Danbury.  On the other hand, Respondent does not attempt to explain how there was "some evidence" to support the charge. Instead, he asserts conclusory statements about the length of the DHO's findings or notes the evidence the DHO relied upon in reaching their decision in a general sense, rather than how that evidence possibly supports the Code 299 violation.  Overall, neither party's submission specifically discusses whether there was "some evidence" showing that Vandegrift's conduct, while not constituting a Code 206 violation, nevertheless sufficiently interfered with the security or orderly running of FCI Danbury to constitute a Code 299 violation.

---

disciplinary proceedings otherwise violated his due process rights.  In other words, he does not contend that, inter alia, he failed to receive written notice of the charge against him, he lacked an opportunity to call witnesses and present evidence in his own defense, the DHO failed to provide him with a written statement of the evidence they relied upon in reaching their decision, or the DHO's sanctions were not commensurate to the offense.  However, even if Vandegrift had challenged these aspects of his disciplinary proceedings, his arguments would lack merit as the record shows that he received adequate and timely notice of the charge against him, he had an opportunity to call witnesses and present evidence in his own defense, and the DHO supplied him with a written statement identifying the evidence the DHO relied upon in concluding that he destroyed property valued at $100 or more.  See (Doc. Nos. 1-1 at 7–10; 6-4–6-7).

16

The Court was unable to locate any Section 2241 habeas case in which a DHO found a prisoner committed a violation of Code 299, most like Code 206, where the prisoner, like Vandegrift in this case, never actually communicated with, or directed a communication to, a prison official or another prisoner in any manner. Instead, the cases involving this type of violation all involved at least some sort of communication between the prisoner and another individual in the prison. See, e.g., Bullard v. Scism, 449 F. App'x 232, 233 (3d Cir. 2011) (unpublished) (indicating that the petitioner's Code 299 most like Code 206 charge was based on him placing a letter directed to a female correctional officer which contained romantic sentiments under the door to the officers' station in his unit); Smadi v. Lammer, No. 18-cv-01702, 2021 WL 2476754, at *1 (S.D. Ill. June 17, 2021) (stating that the petitioner's Code 299 most like Code 206 charge arose from an incident where he gave "a female corrections officer a three-page letter in which he made references to inappropriate feelings and conduct towards her"); Schreane v. Lake, No. 17-cv-01217, 2018 WL 6169343, at *1–2 (E.D. Cal. Nov. 26, 2018) (explaining that the petitioner's Code 299 most like Code 206 charge arose from letters to a female physician working at another federal correctional facility); McRae v. Winn, No. 13-cv-02103, 2016 WL 8136635, at *1–2 (D. Ariz. Nov. 3, 2016) (indicating that the DHO found a Code 299 most like Code 206 violation based on the petitioner's four-page handwritten letter he gave to a female correctional officer), report and recommendation adopted, 2017 WL 413093 (D. Ariz. Jan. 31, 2017); Futch v. Nash, No. 16-cv-00175, 2016 WL 10988801, at *1, 2 (W.D. Tex. Aug. 2, 2016) (stating that Code 299 most like Code 206 charge arose from the petitioner's sexual harassment towards other inmates), report and recommendation adopted, 2016 WL 10988770 (W.D. Tex. Sept. 2, 2016), aff'd, 700 F. App'x 385 (5th Cir. 2017) (unpublished); Schreane v. Thomas, No.

14-cv-00246, 2014 WL 5493190, at *5 (M.D. Pa. Oct. 30, 2014) (noting that Code 299 most like Code 206 charge was based on the petitioner's letter to a prison physician's assistant).

Even though these other cases involved factual circumstances in which the petitioner actually communicated with another person, the DHO did not need to rely on evidence showing that Vandegrift made a sexual proposal or threat to the female prison official to determine that he violated Code 299 because a violation of this Code requires only that Vandegrift's conduct was (1) similar to another Code violation and (2) disrupts or interferes with the security or orderly running of the prison. With this distinction in mind, the Court concludes that the DHO identified "some evidence" to support the Code 299 violation, namely, Vandegrift's letters to family, his journal entry, and the memo the DHO received from Psychology.

The Court recognizes that Vandegrift's letters and journal entry were not directed to the female prison official referenced in his writings; nevertheless, they were close enough to acts constituting a Code 206 violation because they evidenced his desire, through mostly provocative and salacious language, to engage in a sexual relationship with the prison official, whom Vandegrift sexually objectified and dehumanized by describing her only through the lens of his sexual desire toward her. There is a "fundamental difference between normal society and prison society," and "[t]he maintenance of strict security and discipline, with its unfortunate but unavoidable circumscription of an inmate's freedom to act, is essential to safe and efficient prison administration." See Myers v. Aldredge, 492 F.2d 296, 310 (3d Cir. 1974). Here, the DHO explained that Vandegrift's conduct, i.e., "mak[ing] any sort of sexual comments regarding any staff member[,] poses a serious threat to the health, safety, and welfare of not only that staff member, but that of the inmate making the statements." See (Doc. No. 1-1 at 10). The DHO further explained that the type of behavior in which Vandegrift engaged "interferes with the staff

member's ability to complete his/her assigned duties and effectively deal with other inmates." See (id.). Therefore, the DHO identified "some evidence" in support of their decision and explained how Vandegrift's conduct "disrupt[ed] or interfere[d] with the security or orderly running of the institution" to constitute a Code 299 violation.

Even if the Court determined that the DHO did not adequately explain how the evidence identified in their decision supported the Code 299 violation, the Court would not conclude that Vandegrift's due-process rights were violated because the record shows that his conduct disrupted or interfered with the security or orderly running of FCI Danbury. As stated in the DHO's decision, Vandegrift's May 5, 2025 letter to his brother in which he described his sexual urges toward a female staff member, led to an investigation by FCI Danbury investigators. See (Doc. No. 1-1 at 9). The investigation included, inter alia: (1) speaking to Vandegrift on May 7, 2025, and having him acknowledge that he was speaking about a female x-ray technician in his letter to his brother; (2) finding two additional letters, one also dated on May 5, 2025, addressed to Vandegrift's mother, and the other dated May 25, 2025, almost three weeks after the investigator spoke to Vandegrift about his letter to his brother, in which he expressed his sexual desires toward the female staff member; (3) securing and inventorying Vandegrift's personal property on May 7, 2025; (4) searching through Vandegrift's personal property and discovering a journal with a journal entry in which Vandegrift expressed his wish that prisoners could engage in sexual activity with prison staff; (5) reviewing "CCTV, inmate communications, [and] medical assessments, and [conducting] inmate interviews"; and (6) reviewing the memo from the psychology department stating that Vandegrift was counseled on October 23, 2023 about "maintain[ing] . . . appropriate boundaries when talking about staff." See id. Thus, Vandegrift's conduct disrupted or interfered with the security or orderly running of FCI Danbury insofar as it

triggered an investigation due to the sexual nature of his written correspondence and journal entry.

Although Vandegrift may not have intended that the female prison official read his letters or journal entry, he does not contend that he did not know that his letters and journal entry could, and probably would, be read by prison officials.  As such, he wrote the letters and journal entry despite knowing that his letters could be read by individuals other than his family and himself.  Moreover, the DHO identified the memo from Psychology which stated that Vandegrift was warned almost eighteen months prior to the events at issue that he needed to maintain "appropriate boundaries when talking about staff."  See (Doc. No. 1-1 at 9).  Sexually objectifying a female official through explicit letters to family, which could be read by prison officials, does not show that Vandegrift was maintaining appropriate boundaries, especially considering his underlying criminal conviction.[10]  Furthermore, as the DHO noted, Vandegrift's conduct affects the female official's assigned duties, see (id.), including any duties that would bring her into contact with Vandegrift as well as her interactions with other inmates at FCI Danbury.

Overall, the record from the DHO's disciplinary hearing shows that Vandegrift received all the process he was due under the Fifth Amendment.  He appeared before an impartial DHO, he received advance notice of his charge, he requested and called a witness on his behalf, he made a statement on his behalf, he had the option of being assisted by an inmate representative, and the DHO's decision set forth the evidence relied upon and the rationale for determining that

---

[10]  To the extent that Vandegrift argues that his staff representative's statement that his counseling in 2023 "had nothing to do with sexually related boundaries" counters the memo from Psychology, this Court is not weighing the evidence identified by the DHO.  Rather, the Court's standard of review limits the inquiry to whether the DHO identified "some evidence" to support their decision.  See Hill, 472 U.S. at 457 (describing standard of review).

Vandegrift violated Code 299.  This decision is supported by "some evidence" showing that Vandegrift's conduct was like a Code 206 violation, and that his conduct disrupted or interfered with the security or orderly administration of FCI Danbury.  Accordingly, the Court will deny Vandegrift's Section 2241 habeas petition.

## IV.    CONCLUSION

For the reasons stated above, the Court will deny Vandegrift's Section 2241 habeas petition.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania